No. 21-30753

# In the United States Court of Appeals for the Fifth Circuit

JESSIE J. GRACE, III,

*Petitioner – Appellee*

v.

TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY

*Respondent – Appellant*

### APPELLANT'S ORIGINAL OPENING BRIEF

On Appeal from the United States District Court for the Eastern
District of Louisiana, Civil Action No. 02-CV-3818
Honorable Jane Triche Milazzo, District Judge

JEFF LANDRY
ATTORNEY GENERAL

BY:  */s/ Christopher N. Walters*

Elizabeth Baker Murrill (#20685)
 Solicitor General
Shae McPhee (#38565)
 Deputy Solicitor General
Louisiana Department of Justice
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov

Christopher N. Walters (#35579)
Grant L. Willis (#34820)
 Assistant Attorneys General
Louisiana Department of Justice
Criminal Division
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6200
E-mail:   WaltersC@ag.louisiana.gov
             WillisG@ag.louisiana.gov

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, undersigned counsel certifies that the following persons have an interest in the outcome of this appeal. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Jessie J. Grace, III – Petitioner-Appellee

Tim Hooper, Warden, – Respondent-Appellant
Louisiana State Penitentiary

Christopher Albert Aberle – Counsel for Petitioner-Appellee

Michael Gerard Reihlmann – Counsel for Petitioner-Appellee

Jeff Landry, Attorney General for the State of Louisiana
Louisiana Department of Justice (Baton Rouge)

Christopher Neal Walters, Assistant Attorney General, Louisiana Department of Justice – Counsel for Respondent – Appellant

Grant Lloyd Willis, Assistant Attorney General, Louisiana Department of Justice – Counsel for Respondent – Appellant

Elizabeth Baker Murrill, Solicitor General, Louisiana Department of Justice – Counsel for Respondent – Appellant

Shae McPhee, Deputy Solicitor General, Louisiana Department of Justice – Counsel for Respondent – Appellant

/s/ *Christopher N. Walters*
Christopher N. Walters (#35579)

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(2) and 5th Cir. R. 28.2.3, Respondent-Appellant, Tim Hooper, respectfully suggests that oral argument may be likely to assist this Court in deciding this matter.

The main issue presented for review to this Court is whether the federal district court below faithfully adhered to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) when it granted Petitioner habeas corpus relief and vacated Petitioner's 1994 conviction for second-degree murder. First, the district court clearly erred by failing to properly identify the clearly established Federal law under *Brady v. Maryland*, 373 U.S. 83 (1963). And, second, the district court fundamentally erred at AEDPA's second step of review by failing to give any deference to the state court's decision as required by AEDPA. Finally, even assuming Grace could overcome AEDPA's relitigation bar, Grace cannot prove a *Brady* violation under a *de novo* review.

Oral argument may correspondingly assist the Court in focusing on the correct legal standard under AEDPA and in properly analyzing the state court decision on the *Brady* doctrine under the correct legal standards.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF AUTHORITIES ........................................................vi

STATEMENT OF JURISDICTION ............................................. 1

ISSUES PRESENTED FOR REVIEW ......................................... 1

STATEMENT OF THE CASE ................................................. 2

   I.   STATEMENT OF THE FACTS ................................................. 2

   II.  RELEVANT STATE AND FEDERAL COURT PROCEDURAL HISTORY ......... 4

      A. Petitioner's First Round of Post-Conviction Relief Proceedings – 1996 to 2004 ..................................................... 4

      B. Petitioner's Second Round of Post-Conviction Relief Proceedings – 2010 to 2015 .......................................... 6

      C. Petitioner's Third and Most Recent Round of Post-Conviction Relief Proceedings – 2015 to Present .......................... 8

STANDARD OF REVIEW ..................................................... 11

SUMMARY OF THE ARGUMENT ........................................... 12

ARGUMENT ............................................................... 15

   I.   THE DISTRICT COURT MISIDENTIFIED "THE CLEARLY ESTABLISHED FEDERAL LAW" .......................................................... 16

   II.  THE DISTRICT COURT'S ANALYSIS WAS "FUNDAMENTALLY INCONSISTENT WITH AEDPA" AND WAS CLEARLY ERRONEOUS IN FAILING TO AFFORD DEFERENCE TO THE STATE COURT'S DECISION ....21

   III. EVEN ASSUMING THAT THE STATE COURT'S DECISION WAS UNREASONABLE, THIS COURT SHOULD DENY PETITIONER'S *BRADY* CLAIM AFTER ITS OWN *DE NOVO* REVIEW ........................... 30

A. A *Brady* claim fails if the suppressed evidence is not material . 31

B. The state courts correctly held Grace failed to prove a *Brady* violation ...................................................................................... 32

   1. Det. Snow/Pernia's grand jury statements were not material ................................................................................ 33

   2. Michelle Temple's grand jury testimony was not material ..... 37

C. Contrary to the district court's erroneous holding, the state courts correctly held that the suppressed grand jury testimony was not material ........................................................................ 41

CONCLUSION ........................................................................... 46

CERTIFICATE OF SERVICE ................................................... 48

CERTIFICATE OF COMPLIANCE ......................................... 49

# TABLE OF AUTHORITIES

## Cases

*Barefoot v. Estelle,*
    463 U.S. 880 (1983) ................................................................ 14

*Brady v. Maryland,*
    373 U.S. 83 (1963) ........................................................... passim

*Brecht v. Abrahamson,*
    507 U.S. 619 (1993) ................................................................ 19

*Floyd v. Vannoy,*
    894 F.3d 143 (5th Cir. 2018) ................................................. 46

*Greene v. Fisher,*
    565 U.S. 34 (2011) ................................................................. 19

*Grim v. Fisher,*
    816 F.3d 296 (5th Cir. 2016) ................................................. 17

*Harrington v. Richter,*
    562 U.S. 86 (2011) ........................................................... passim

*Hebert v. Rogers,*
    890 F.3d 213 (5th Cir. 2018) ................................................. 24

*Hughes v. Johnson,*
    191 F.3d 607 (5th Cir.1999) ................................................. 44

*Jenkins v. Hall,*
    910 F.3d 828 (5th Cir. 2018) ................................................. 11

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ................................................................ 41

*Langley v. Prince,*
    926 F.3d 145 (5th Cir. 2019) ........................................... passim

*Lindh v. Murphy,*
    521 U.S. 320 (1997) ................................................................ 16

*Lockyer v. Andrade,*
    538 U.S. 63 (2003) ............................................................ 17, 22

*Lopez v. Smith,*
    574 U.S. 1 (2014) ............................................................. 17, 18, 20, 21

*Medellin v. Dretke,*
    371 F.3d 270 (5th Cir. 2004) ................................................ 43

*Murphy v. Johnson,*
    205 F.3d 809 (5th Cir. 2000) ................................................ 44

*Napue v. People of State of Ill.,*
    360 U.S. 264 (1959) .................................................... 7, 20, 29

*Parker v. Matthews,*
    567 U.S. 37 (2012) ................................................................ 18

*Pennsylvania v. Ritchie,*
    480 U.S. 39 (1987) ................................................................ 32

*Reeder v. Vannoy,*
    978 F.3d 272 (5th Cir. 2020) ................................... 11, 28, 45

*Renico v. Lett,*
    559 U.S. 766 (2010) ............................................................. 16

*Salts v. Epps,*
    676 F.3d 468 (5th Cir. 2012) .............................................. 31

*Schriro v. Landrigan,*
    550 U.S. 465 (2007) ............................................................. 13

*Sexton v. Beaudreaux,*
    138 S. Ct. 2555 (2018) ................................................... 23, 24

*Shinn v. Kayer,*
    141 S. Ct. 517 (2020) ......................................................... 23

*Shoop v. Hill,*
    139 S. Ct. 504 (2019) ......................................................... 14

*Smith v. Cain,*
    565 U.S. 73 (2012) ...................................................... 28, 45, 46

*Smith v. Davis,*
    927 F.3d 313 (5th Cir. 2019) ............................................... 1

*State v. Grace,*
    2017-2070 (La. 2/25/19), 264 So. 3d 431 ........................... 9, 13

*State v. Grace,*
  94-295 (La. App. 5 Cir. 9/27/94), 643 So. 2d 1306 ...................... 2, 4, 45

*State v. Sanders,*
  93-0001 (La. 11/30/94), 648 So. 2d 1272 ............................. 19

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................ 41

*United States v. Agurs,*
  427 U.S. 97 (1976) .............................................. 32, 46

*United States v. Bagley,*
  473 U.S. 667 (1985) ................................................ 32

*United States v. Brown,*
  650 F.3d 581 (5th Cir. 2011) ....................................... 41

*United States v. Pretel,*
  939 F.2d 233 (5th Cir.1991) ........................................ 44

*Wearry v. Cain,*
  577 U.S. 385 (2016) ............................................ 28, 45

*White v. Woodall,*
  572 U.S. 415 (2014) ............................................ 12, 18

*Williams v. Taylor,*
  529 U.S. 362 (2000) ............................................ 17, 22

*Wilson v. Sellers,*
  138 S.Ct. 1188 (2018) .............................................. 24

*Woodford v. Visciotti,*
  537 U.S. 19 (2002) ................................................. 16

## Statutes

28 U.S.C. § 1291.................................................... 1

28 U.S.C. § 2253.................................................... 1

28 U.S.C. § 2254.............................................. passim

## Rules

5th Cir. R. 28.2.3 ................................................ iii

5th Cir. Rule 28.2.4 ............................................. iii

Fed. R. App. P. 32 ................................................................. 49

Fed. R. App. P. 34 ................................................................. iii

Fed. R. App. P. 34(a)(2) ........................................................ iii

## STATEMENT OF JURISDICTION

"The courts of appeals…shall have jurisdiction of appeals from all final decisions of the district courts of the United States…" 28 U.S.C. § 1291. While 28 U.S.C. § 2253(c)(1) generally requires a certificate of appealability for appeals of a final order in a habeas corpus proceeding, this Court has explained that," Federal Rule of Appellate Procedure 22(b)(3) provides that a COA is not required when a state or its representative appeals." *Smith v. Davis*, 927 F.3d 313, 319 (5th Cir. 2019).

This appeal arises from the final Order and Judgment of the federal District Court for the Eastern District of Louisiana, which granted Petitioner habeas relief and ordered the State to either retry or release Petitioner within 180 days of the Order. ROA.2992-2993. As such, this Honorable Court has jurisdiction to hear and decide this appeal.

## ISSUES PRESENTED FOR REVIEW

The following issues are currently before the Court:

1. Whether the district court erred when it failed to properly identify clearly established Federal law, as determined by the Supreme Court, applicable to Petitioner's *Brady* claim?

2. Whether the district court erred when it failed to apply AEDPA deference to the state court's decision as required by Supreme Court precedent?

3. Whether, even assuming Grace could overcome AEDPA's relitigation bar, Grace nonetheless failed to prove a Brady violation under *de novo* review?

## STATEMENT OF THE CASE

### I.   STATEMENT OF THE FACTS

Petitioner-Appellee, Jessie Grace, III, was charged in 1993 with one count of second-degree murder for the shooting death of John Wayne Palmer on February 21, 1993. Grace's trial was held in Jefferson Parish District Court, from January 12-14, 1994, and at the conclusion of trial, Grace was convicted of second-degree murder by a unanimous jury verdict. See *State v. Grace*, 94-295 (La. App. 5 Cir. 9/27/94), 643 So. 2d 1306.

At this trial, the State called eleven (11) witnesses, which included two Jefferson Parish Sheriff's Office (JPSO) officers (who initially arrived on scene and who was the evidence custodian), two JPSO detectives (who conducted the investigation), a forensic pathologist (who performed the

autopsy on the victim), an expert in serology (who examined the blood found at the scene), an expert in firearms (who examined the bullets recovered), and four eyewitnesses. ROA.801-02. ROA.1003-04. Of those four eyewitnesses, two of those witnesses (Michael Cheattham and Michelle Temple) did not see the actual shooting but observed some of the events before and after the shooting. ROA.962-74; ROA.1027-69. The other two witnesses (Derrick Hudson and Sherman Moses) actually saw Petitioner, Jessie Grace, hit the victim in the face with a gun and then shoot the victim as he was running away from Petitioner. ROA.1132-73; ROA.1178-1206.

On direct appeal, the Louisiana Fifth Circuit Court of Appeals issued its decision on September 27, 1994, setting forth the relevant facts established at trial as follows:

> During the afternoon of February 21, 1993, the victim, John Wayne Palmer, and his girlfriend, drove to the Jefferson Place Apartments in Marrero, Louisiana in order to purchase crack cocaine. Palmer exited the vehicle and asked two men, Derek Hudson and Sherman Moses if they had any crack cocaine. Although Hudson and Moses were unable to supply the victim, they brought him to the defendant who was standing nearby. The defendant momentarily left the group and returned with drugs and a gun, identified by Moses as a "black 38, snub nose." The defendant then requested that the victim follow him to a nearby alleyway. According to Hudson and

> Moses, the victim paid the defendant and the defendant gave the victim drugs. However, the defendant suddenly struck the victim in the mouth with his gun and demanded that he relinquish the drugs and his money. The victim complied and pleaded for his life and proceeded to turn in order to leave the area when he was shot from behind, twice, by the defendant.
>
> The autopsy performed on the victim revealed that he died as result of gunshot wounds above the right ear and on the right side of his back. Both bullets were fired from a gun behind and to the right of the victim at a distance greater than twelve inches. There were lacerations near the victim's mouth indicated that the victim had been struck by a blunt instrument.

*State v. Grace*, 94-295 (La. App. 5 Cir. 9/27/94), 643 So. 2d 1306, 1307.

Further, the Louisiana Fifth Circuit Court of Appeal rejected Grace's sole assignment of error and affirmed his conviction and sentence, after amending his sentence to give credit for time served. *Id.* Grace did not seek further appellate review on direct appeal, and thus, Grace's conviction and sentence became final on October 27, 1994.

## II.   RELEVANT STATE AND FEDERAL COURT PROCEDURAL HISTORY

### A. Petitioner's First Round of Post-Conviction Relief Proceedings – 1996 to 2004

Over fourteen months after his conviction became final, Grace filed his first application for post-conviction relief in state court on January 9, 1996 asserting claims of *Brady* violations, insufficient evidence, unfair

trial, and ineffective assistance of counsel. ROA.2900. After narrowing his claims at the trial court to a *Brady* violation and ineffective assistance of counsel and after a hearing on the ineffective assistance claim, the state trial court denied Grace's application for post-conviction relief. ROA.2901. On May 22, 2001, Grace's writ application on the ineffective assistance of counsel claim was denied by the Louisiana Fifth Circuit. ROA.2901. And, on May 24, 2002, the Louisiana Supreme Court denied Grace's writ application without stated reasons. ROA.2901.

Ten months after this Louisiana Supreme Court denial, on March 26, 2003, Grace filed in Federal District Court in the Eastern District of Louisiana, a pro se federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 asserting eleven claims therein.[1] ROA.22-54. On

---

[1] Those eleven claims were summarized below as: (1) The state trial court erred in prohibiting the defense from questioning a key prosecution witness concerning his bias. (2) Errors patent on the face of the record. (3) The state trial court erred in permitting the State to introduce other crimes evidence. (4) The state trial judge failed to excuse jury panelists challenged by petitioner for cause and erred in excusing some challenged by the State for cause. (5) The prosecutor made improper comments during closing arguments. (6) The sentencing judge failed to consider and comply with "Felony Guidelines," failed to consider mitigating factors, and imposed an excessive sentence. (7) The indictment was defective. (8) The state trial court improperly instructed the jury on "reasonable doubt." (9) His trial counsel rendered ineffective assistance by filing deficient pre-sentencing motions. (10) The state trial court erred when it denied petitioner's motion to suppress identification and evidence. (11) The State failed to prove each element of the crime beyond a reasonable doubt. See ROA.2896. Footnote 2.

February 5, 2004, the District Court issued an Order and Judgment finding that Grace failed to present almost all claims to the Louisiana Supreme Court for review and therefore, Grace failed to exhaust his available state court remedies. ROA.88-89. The District Court dismissed Grace's petition for habeas corpus relief without prejudice for failure to exhaust and held that Grace would be allowed to re-open this action "within ninety days of a final determination by the Louisiana Supreme Court of his right to habeas corpus relief on the claims urged herein." ROA.89.

### B. Petitioner's Second Round of Post-Conviction Relief Proceedings – 2010 to 2015

More than six years after the 2004 dismissal of his federal petition for habeas corpus relief, Grace filed his second application for post-conviction relief in state court on December 1, 2010, raising a claim of newly discovered evidence and a claim of ineffective assistance of counsel. ROA.2902. On April 1, 2011, the state trial court denied Petitioner's second application for post-conviction relief as untimely and repetitive/successive under La. C.Cr.P. Art. 930.8 and La. C.Cr.P. Art. 930.4(E). ROA.2902. Grace sought review from the Louisiana Fifth Circuit, and on June 24, 2011, the Louisiana Fifth Circuit denied his writ

application finding no error in the state trial court decision that his second application for post-conviction relief was untimely. ROA.769. Finally, in response to Petitioner's application for writ of certiorari, the Louisiana Supreme Court denied Petitioner's application without stated reasons on March 7, 2012. ROA.2902.

Following this set of state court proceedings, Grace sought to reopen this case, and on August 1, 2012, the District Court granted the motion to reopen this case. ROA.665. Accordingly, Grace's amended petition for federal habeas relief was filed into the record in the District Court on September 10, 2012. ROA.675-718. In his Amended Petition, Grace asserted only three claims: 1) denial of opportunity to cross-examine a witness, Derrick Hudson, regarding pending, unrelated criminal charges; 2) a claim under *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) related to witness testimony of Sherman Moses and Derrick Hudson; and 3) an ineffective assistance of counsel claim related to failure to use pretrial statements of eyewitnesses Michelle Temple, Sherman Moses, and Derrick Hudson. ROA.675-718. In addition, Grace readily acknowledged that his claims were procedurally barred but attempted to circumvent his procedural default by claiming "actual

innocence". ROA.682. On June 28, 2013, the Magistrate Judge issued a report and recommendation recommending Grace's amended petition be dismissed as procedurally barred as Grace, relying upon "inconsistent and belated affidavits" of two new individuals, Renata Hughes and Troy McCloud, did not show his "actual innocence". ROA.1247-1276.

However, on October 25, 2013, the District Court declined to adopt the report and recommendation and instead ordered an evidentiary hearing as to Grace's claim of "actual innocence". ROA.1294-1295. Following this evidentiary hearing, the District Court issued an Order which analyzed grand jury transcripts produced for in camera review, found these transcripts might constitute potential new claims for Grace, and stayed this matter while Grace sought to exhaust any potential new claims in state court. ROA.2551-2567.

### C. Petitioner's Third and Most Recent Round of Post-Conviction Relief Proceedings – 2015 to Present

After the stay of this matter in federal court, on February 10, 2015, Grace filed his third application for post-conviction relief in state court asserting a *Brady* violation in relation to the grand jury testimony. ROA.2903. While the state trial court granted Grace's third application for post-conviction relief, the Louisiana Fifth Circuit Court of Appeals

granted the State's writ application on November 14, 2017, reversed the state trial court, and reinstated Grace's conviction and life sentence. ROA.2669-2680. In its opinion, the Louisiana Fifth Circuit cited the proper legal standard as set forth by Supreme Court precedent on the *Brady* doctrine and held that the substance of the undisclosed grand jury testimony, was either not material or not exculpatory when viewed in light of all the other evidence presented at trial. ROA.2673-2678. On February 25, 2019, the Louisiana Supreme Court denied Grace's application for writ of certiorari holding, in relevant part, "Denied. Relator fails to show that the state withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) …" *State v. Grace*, 2017-2070 (La. 2/25/19), 264 So. 3d 431.

On March 26, 2019, the district court granted Grace's motion to lift the stay in this matter and ordered Grace to file an amended petition. ROA.2611. Following filing and correction, Grace's Corrected Supplemental Amended Petition for habeas corpus relief was filed on June 11, 2019. ROA.2737-2777. Following briefing, the magistrate judge issued an extensive and detailed report and recommendation as to

Grace's new *Brady* claim recommending that Grace's claim be denied and dismissed finding that, "The record contains ample support for the reasonable conclusion reached by the Louisiana Supreme Court (and the Louisiana Fifth Circuit) that the grand jury testimony was not material under *Brady*." ROA.2895-2945. ROA.2944.

Nineteen months later, on December 2, 2021, the district court issued its Order and Reasons in which it formally denied Grace's Amended Petition as procedurally barred (for failure to show "actual innocence" exception applied), but the Order granted Grace's Corrected Second Supplemental Petition for habeas relief finding a *Brady* violation had occurred and ultimately ordered the State to "either retry Petitioner or release him within 120 days of this Order." ROA.2963-2992. ROA.2992. In its Order and Reasons, the district court merely set forth its disagreement with the state court decision on the *Brady* claim and summarily held that the state court decision was unreasonable because it disagreed with the district court's own determination of the *Brady* claim. ROA.2987-2992. Respondent timely filed a notice of appeal on December 13, 2021. ROA.2998.

Additionally, on December 13, 2021, Respondent filed a Motion to Stay the district court's judgement and order. ROA.2999-3014. However, on February 8, 2022, the district court issued an Order denying Respondent's motion to stay judgment and release, tersely stating it was "not impressed" with the State's arguments on the merits. Rec. Doc. 159. Although the district court denied the State's request for a stay of its release order pending appeal, a motions panel of this Court issued the stay after observing the strength of the State's arguments on the merits. Order Granting Stay Pending Appeal (Feb. 23, 2022)(noting "[t]he state has articulated a 'substantial case on the merits.'" (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987).

## STANDARD OF REVIEW

This Court has set forth the generally applicable standard of review as follows, "In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court." *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020) (citing *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018).

## SUMMARY OF THE ARGUMENT

The district court clearly erred in holding that the state court's decision that Petitioner failed to prove a *Brady* violation was an objectively unreasonable application of clearly established Federal law.

First, the district court failed to correctly identify the relevant "clearly established Federal law, as determined by the Supreme Court of the United States"—which is the "first step" in any case with a habeas petition subject to the relitigation bar of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019) (en banc)(quoting 28 U.S.C. § 2254). Specifically, the district court improperly relied upon caselaw from *this Court*, rather than the precedent of the Supreme Court, in its analysis of Grace's claim under *Brady v. Maryland*. ROA.2989. ("The Fifth Circuit has made clear, however, that whether a witness made a deal with the State is not dispositive."). That is flatly forbidden by both the text of § 2254 and a host of Supreme Court precedent. *See, e.g.*, *White v. Woodall*, 572 U.S. 415, 420 n.2 (2014) (A lower federal habeas court may not even "consult its own precedents, rather than those of the Supreme Court, in assessing a habeas claim governed by § 2254." (cleaned up)).

12

Second, the district court failed to show the proper deference to the Louisiana Supreme Court's decision, which rejected Grace's *Brady* claim on the merits. *State v. Grace*, 2017-2070 (La. 2/25/19), 264 So. 3d 431, 431–32. ("Relator fails to show that the state withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)).

Under § 2254, the question for a federal habeas court is whether the state court's decision to deny relief "was contrary to or involved an unreasonable application of clearly established Federal law." The Supreme Court has explained that it is impermissible to grant habeas relief unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

What a federal habeas court is *not* supposed to do under § 2254 is merely relitigate the issue considered by state court and then decide

13

whether it would have arrived at the same result. *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). AEDPA forecloses relief unless a prisoner can show that the state court's error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (emphasis added). In short, a federal habeas court should not grant habeas relief unless the state court's decision is not merely incorrect, but so obviously wrong that any reasonable jurist should have known better. If an issue presents a close call, a federal habeas court should defer to the state court's decision.

The district court here simply relitigated the *Brady* issue de novo and concluded the state court got it wrong. The district court never explained why the state court's decision was so obviously wrong that no reasonable jurist could have agreed with it. If the district court had performed the proper analysis, it should have concluded—as the magistrate judge did in his thorough report and recommendation—"the record contains ample support for the reasonable conclusion reached by the Louisiana Supreme Court (and the Louisiana Fifth Circuit) that the grand jury testimony was not material under *Brady*." ROA.2944.

Finally, even if the Court disagrees and concludes the state court's decision was unreasonable, Grace must still must show, on *de novo* review, that he is in custody in violation of the Constitution or laws or treaties of the United States." *Langley*, 926 F.3d at 156. But, even under *de novo* review, Grace still cannot prove that the suppressed grand jury testimony is material under *Brady* and its progeny.

Accordingly, the district court's Judgment granting the Petitioner's Corrected Supplemental Amended Petition and ordering his release or retrial should be reversed, and Petitioner's claims should be dismissed with prejudice.

## ARGUMENT

In this case, Petitioner filed a petition for federal habeas corpus relief challenging his 1994 state court conviction for second-degree murder and seeking to overturn the Louisiana Supreme Court's decision holding that Petitioner failed to prove a violation of his federal Constitutional rights under *Brady v. Maryland*. As such, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and Supreme Court precedent, which provide detailed guidance to lower courts as to how such claims must be adjudicated.

The Supreme Court has been abundantly clear in regards to the general standard of review under 28 U.S.C. § 2254, stating, "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings… and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam ))(internal quotation marks omitted and emphasis added).

Under 28 U.S.C. § 2254(d), courts generally utilize a two-step process of review: first, identify the clearly established Federal law applicable to the case; and second, analyze the state court's decision to determine whether the state court's decision was contrary to or an unreasonable application of clearly established Federal law.

As shown below, the district court clearly erred at both the first and second step of the AEDPA review, and even assuming that Grace could clear the AEDPA relitigation bar, Grace still cannot prove a *Brady* violation under *de novo* review.

## I.   THE DISTRICT COURT MISIDENTIFIED "THE CLEARLY ESTABLISHED FEDERAL LAW"

This Court recently explained in an *en banc* opinion that correctly

16

identifying the relevant clearly established federal law is the "first step" in any case with a habeas petition subject to § 2254(d). *Langley*, 926 F.3d at 156. "[C]learly established law refers to 'the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision.'" *Grim v. Fisher*, 816 F.3d 296, 304 (5th Cir. 2016) (emphasis added) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). "It includes only the 'holdings, as opposed to the dicta,' of these Supreme Court opinions." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Moreover, when determining the relevant "clearly established" law for the purposes of § 2254(d), lower courts must not "fram[e] [Supreme Court] precedents at [] a high level of generality." *Lopez v. Smith,* 574 U.S. 1, 6 (2014); *see Langley*, 926 F.3d at 156–57 ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citation and quotation omitted)). "It is not enough to say . . . that the [*Brady*] doctrine forms the relevant clearly established law, or that [*Brady*] established the governing principles." *Langley*, 926 F.3d at 156 (cleaned up). Only a Supreme Court case dealing with a due process *Brady* claim and the specific factual context at issue here counts

17

as "clearly established federal law." § 2254(d).

On numerous occasions, the Supreme Court has emphasized that circuit precedent is not "clearly established Federal law." *See, e.g.*, *Lopez*, 574 U.S. at 7 ("Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that the Supreme Court has not announced." (cleaned up)); *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (observing that circuit court precedent "cannot form the basis for habeas relief under AEDPA").

The Supreme Court has reversed circuit courts for relying on their own precedent when considering state court decisions under § 2254(d). *See, e.g.*, *Lopez,* 574 U.S. 1, 6–7 ("The Ninth Circuit attempted to evade this barrier by holding that [its precedent] 'faithfully applied the principles enunciated by the Supreme Court.'" (citation omitted)). Indeed, a circuit court may not even "consult its own precedents, rather than those of [the Supreme] Court, in assessing a habeas claim governed by § 2254." *White*, 572 U.S. at 420 n.2 (emphasis added) (cleaned up). Lower federal court decisions are "irrelevant to the question" of whether a state court decision is reasonable under § 2254(d). *Lopez*, 574 U.S. 1, 7.

For the purposes of AEDPA, state courts have no obligation to

follow anything other than the federal law clearly established in the Supreme Court's contemporaneous holdings. This is true because States are separate sovereigns, and their courts are not bound by any interpretation of federal constitutional law except the express holdings of the Supreme Court. *See State v. Sanders*, 93-0001 (La. 11/30/94), 648 So. 2d 1272, 1279 ("Lower federal court decisions do not bind [the Louisiana Supreme Court's] interpretations of federal constitutional law." (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). Accordingly, when reviewing state court opinions under § 2254(d), federal habeas courts should likewise cabin the scope of their inquiry to the relevant clearly established federal law. *Greene v. Fisher*, 565 U.S. 34, 38 (2011).

The district court failed at the first step of the inquiry. The testimony of Hudson and Moses—eyewitnesses who actually saw the murder—were key to Grace's conviction. The district court found that "[t]he undisclosed grand jury testimony of Sgt. Snow raises significant questions regarding Hudson's credibility and motivation for testifying" because the testimony established Hudson as a co-perpetrator who would be arrested for his involvement in the murder, and not merely a bystander. ROA.2988.

19

The state intermediate appellate court concluded this testimony was not material—in part because there was absolutely no evidence of any deal or agreement between Hudson and the prosecution. ROA.2675. The district court rejected this analysis by looking to precedent from this Court. ROA.2989–90. ("The Fifth Circuit has made clear, however, that whether a witness made a deal with the State is not dispositive."). That was error.

Fifth Circuit precedent is "irrelevant to the question" of whether a state court decision is reasonable under § 2254(d). *Lopez*, 574 U.S. at 7. The Supreme Court has never held that the mere fact that a witness is under investigation is itself material. *Cf. Napue v. People of State of Ill.*, 360 U.S. 264, 270 (1959) (observing that, even though the State had made no binding promises, *a witness' attempt to obtain a deal before testifying was material* because the jury "might well have concluded that [the witness] had fabricated testimony in order to curry the [prosecution's] favor" (emphasis added)).

Moreover, the district court relied on decisions from this Circuit's cases about the *Confrontation Clause* (of the Sixth Amendment) instead of looking for specific *Brady* cases (which spring from the Fifth

Amendment). ROA.2989–90. That was also error because the district court did not frame the inquiry at the proper level of specificity. *Lopez,* 574 U.S. at 6; *see Langley*, 926 F.3d at 156–57. Only Supreme Court cases about the *Brady* doctrine are sufficiently specific to bind and guide the state courts as they conduct their analysis.

By filling the void with Fifth Circuit precedent irrelevant to *Brady*, the district court failed to identify the relevant clearly established federal law and misapplied AEDPA when granting relief to Grace. If the district court had properly considered nothing but *Brady* cases from the Supreme Court, it would have determined that no clearly established federal law precluded the state courts from deciding that the grand jury testimony here was immaterial. Considering that the district court took a wrong turn at the first step, it is not surprising that it erred in its subsequent analysis.

## II. THE DISTRICT COURT'S ANALYSIS WAS "FUNDAMENTALLY INCONSISTENT WITH AEDPA" AND WAS CLEARLY ERRONEOUS IN FAILING TO AFFORD DEFERENCE TO THE STATE COURT'S DECISION

The state courts adjudicated Grace's *Brady* claim on the merits. And so, Grace cannot obtain relief from a federal habeas court unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law." § 2254 (emphasis added).

This is known as the relitigation bar of § 2254. *Langley*, 926 F.3d at 155–

56.

The second step of AEDPA review requires that, "…a state prisoner

must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Richter*, 562 U.S. at 103. The *Richter* Court

reiterated, "It bears repeating that even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable…" and that,

"[i]f this standard is difficult to meet, that is because it was meant to be."

*Richter*, 562 U.S. at 102.

Moreover, "a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law

erroneously or incorrectly…Rather, that application must be objectively

unreasonable." *Lockyer*, 538 U.S. at 75–76 (citing *Williams v. Taylor*, 529

U.S. at 411). Stated differently, the Supreme Court has explained that it

is "fundamentally inconsistent with AEDPA" for a federal court to

evaluate the merits of the case *de novo* while "only tacking on a perfunctory statement at the end of its analysis asserting that the state court's decision was unreasonable." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020)(citing *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) and *Richter*, 562 U.S. at 101–102).

The district court explained why, in its view, the excluded evidence was material. ROA.2992. But the district court never explained why no reasonable jurist could have disagreed in light of some particular Supreme Court case. *Langley*, 926 F.3d at 156. The district court merely relitigated the *Brady* issue de novo and held the state court's decision was objectively unreasonable. ROA.2988–92.

But, the question is *not* whether this Court (or the district court) would have reached the same decision as the state courts on the merits on *de novo* review. *Richter*, 562 U.S. at 102. The Supreme Court has repeatedly chastised lower courts for employing exactly this type of analysis, describing such analysis as "fundamentally inconsistent with AEDPA." *Kayer*, 141 S. Ct. at 523 (finding erroneous a federal court's analysis treating "…the unreasonableness question as a test of its confidence in the result it would reach under de novo review" (citing

*Sexton*, 138 S. Ct. at 2560; *Richter,* 562 U.S. at 101-102).

Under a proper AEDPA second step analysis, no United States Supreme Court case prevented the state courts from concluding that the grand jury testimony was not material here "because while it inculpates Hudson, it does not, in any way, exculpate [Grace] as to his participation in the commission of the murder." ROA.2677. And, neither the Petitioner nor the district court identified any such Supreme Court case dictating a contrary result.

Here, the Louisiana Supreme Court denied Grace's claim because he failed "to show that the state withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)."[2] ROA.2681. Further, Louisiana Fifth Circuit Court of Appeals provided a more detailed reasoning in its opinion rejecting Grace's *Brady* claim. See ROA.2669-2680. Specifically, the Louisiana Fifth Circuit identified the scope of Petitioner's Brady claim as

---

[2] Under *Wilson v. Sellers*, 138 S.Ct. 1188 (2018), the Louisiana Supreme Court's memorandum opinion is the last reasoned decision by the state courts. And so, it is the opinion federal habeas courts should review under §2254. The brevity of the state court's opinion is immaterial. *Langley,* 926 F.3d at 163 (citing *Hebert v. Rogers*, 890 F.3d 213, 221 (5th Cir. 2018)). Although the Louisiana Supreme Court's opinion was terse, presumably it agreed with any reasonable analysis offered by the state intermediate court of appeals.

undisclosed grand jury testimony of Det. Maggie Snow/Pernia and Michelle Temple. ROA.2671. The Louisiana Fifth Circuit further identified Grace's specific arguments regarding the grand jury testimony as follows: 1) Det. Snow/Pernia's statement "that Derek Hudson was going to be arrested for the murder"; 2) "testimony concerning Michelle Temple's possible  identification of Hudson as the shooter in this case"; and 3) "Detective Pernia's 'false' statement that Temple had placed defendant at the scene of the murder. ROA.2671.

For its reasoning, the Louisiana Fifth Circuit held that Det. Snow/Pernia's stated intent to arrest Derek Hudson for his involvement in the robbery/murder was not material because "the jury nonetheless heard the underlying evidence on which Detective Pernia determined that Hudson was culpable", because "there is absolutely no evidence to suggest that there was a deal, formal or informal, between Hudson and the State for leniency in exchange for his testimony against defendant", and because "the fact that Hudson was not arrested for the instant murder has no bearing on defendant's culpability in the instant case." ROA.2675. As to Michelle Temple's testimony about possible identification of Hudson as the shooter, the Louisiana Fifth Circuit held

this was not material for the following reasons: 1) "there has been no evidence established of any positive identification of Hudson as the shooter"; 2) "Temple has given several inconsistent statements throughout the investigation, the grand jury proceedings, and the trial"; 3) "Temple did not see the actual shooting but only saw the victim on the ground after the shooting"; and 4) the testimony at trial confirmed that Temple had been shown a photographic lineup including Hudson but could not identify Hudson as having seen him at the scene. ROA.2675-2676.

As to "Detective Pernia's misrepresentation to the grand jury that Temple stated during the investigation that defendant was at the scene of the murder", the Louisiana Fifth Circuit held this immaterial because "Temple gave numerous inconsistent statements" and because "it is not unreasonable to think that Detective Pernia had been told at some point in the course of the investigation that Temple had placed defendant at the scene of the murder". ROA.2677. Finally, the Louisiana Fifth Circuit held that, taken cumulatively, the suppressed evidence is not material because "while it inculpates Hudson, it does not, in any way, exculpate defendant as to his participation in the commission of the murder" and

because the jury heard the independent eyewitness testimony of Sherman Moses which was corroborated by the physical and forensic evidence. ROA.2677-2678.

Most importantly at the AEDPA second step review, the district court clearly erred in finding that the state court's decision was objectively unreasonable. This is because, while fairminded jurists might disagree as to whether the state courts' decision was correct, the essential question is whether existing Supreme Court precedent applying the *Brady* doctrine explicitly rejects the state courts' decision such that no fairminded jurists could disagree that the state court's decision violated clearly established Federal law.

While the burden is and remains on Grace, as the petitioner, to identify Supreme Court precedent on point, neither Grace nor the district court identified any Supreme Court precedent that clearly rejects the reasoning and decision of the state courts. While *Brady* set forth the broad standard for analyzing claims of suppressed evidence, it is absurd to suggest that no fairminded jurist could disagree that the state court's decision here conflicted with *Brady* itself, which involved the suppression

of a co-defendant's full confession to the murder at issue. *Brady*, 373 U.S. at 88.

Going beyond these general propositions of law, the most recent Supreme Court decisions addressing and applying the *Brady* doctrine in, *Smith v. Cain*, 565 U.S. 73 (2012) and *Wearry v. Cain*, 577 U.S. 385 (2016), readily shows how this case is distinguishable from those cases finding a *Brady* violation. Specifically, this Court examined the applicability of *Smith* and *Wearry* to *Brady* claims in its recent opinion, *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020). In *Reeder,* this Court explained that "the multiple pieces of evidence withheld in *Wearry* addressed the key witnesses' motives to lie and directly undermined their testimony" and that "[i]n *Smith*, the witness's undisclosed statements directly contradicted his testimony" as to the reliability of his identification of the defendant as the shooter. *Reeder*, 978 F.3d at 276 (citing *Wearry*, 577 U.S. at 392-393 and *Smith*, 565 U.S. at 76)(cleaned up).

Here, as in *Reeder*, this case is readily distinguishable from *Wearry* and *Smith*. Indeed, the state courts noted that the State had a strong case with Sherman Moses' independent eyewitness account of the

encounter which was corroborated by the physical evidence and other witness testimony, even without the testimony of Hudson whose testimony "was not only uncontradicted, it was also corroborated by the testimony of Sherman Moses." ROA.2678. Moreover, the Supreme Court has never held that the mere fact that a witness is under investigation is itself material. *Cf. Napue v. People of State of Ill.*, 360 U.S. 264, 270 (1959) (observing that, even though the State had made no binding promises, *a witness' attempt to obtain a deal before testifying was material* because the jury "might well have concluded that [the witness] had fabricated testimony in order to curry the [prosecution's] favor" (emphasis added)).

In sum, if the district court had conducted the proper analysis, it would have concluded that there is ample room for reasonable disagreement about the materiality of the grand jury testimony. No United States Supreme Court case prevented the state intermediate appellate court from concluding that the grand jury testimony was not material here "because while it inculpates Hudson, it does not, in any way, exculpate [Grace] as to his participation in the commission of the murder." ROA.2677.

For the purposes of the relitigation bar, it does not really matter whether the state court was right or wrong about the materiality of the grand jury testimony. The only question is whether the state court's analysis was so bad that no reasonable jurist could have agreed with it. While the correctness of *Brady* question might be a close call, the inquiry under § 2254 is not.

Accordingly, this Court should reverse the decision of the district court and enter judgment dismissing Petitioner's federal habeas claims with prejudice.

## III. EVEN ASSUMING THAT THE STATE COURT'S DECISION WAS UNREASONABLE, THIS COURT SHOULD DENY PETITIONER'S *BRADY* CLAIM AFTER ITS OWN *DE NOVO* REVIEW

As set forth above, Grace failed to show that the state court's decision was an objectively unreasonable application of clearly established Federal law to overcome the AEDPA relitigation bar, and this Court need go no further in its analysis.

Even if the Court disagrees and concludes the state court's decision was unreasonable, Grace's task is still not complete as, "Overcoming AEDPA's relitigation bar is necessary but not sufficient to win habeas relief. Even after overcoming the bar, the prisoner still must show, on *de*

*novo* review, that he is in custody in violation of the Constitution or laws or treaties of the United States." *Langley*, 926 F.3d at 156 (citing *Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012))(cleaned up).

Even under de novo review, Grace still cannot prove that the suppressed grand jury testimony is material under *Brady* and its progeny. After briefly reviewing the basic principles of *Brady* and its progeny, the State will clearly show that Grace has failed to prove a *Brady* violation, and as such, this Court should reverse the district court's judgment and dismiss Grace's claims with prejudice.

### A. A Brady claim fails if the suppressed evidence is not material

Under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, prosecutors are required to disclose evidence that is both favorable to the accused and material to guilt or punishment.  A petitioner alleging a *Brady* violation is required to show that (1) the prosecution suppressed or withheld evidence that was (2) favorable to the accused and (3) material to either guilt or punishment.  A failure to establish any one of these elements is fatal to the claim.

The Supreme Court has explained that evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome at trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). Rather, to rise to the level of a constitutional violation, a failure to disclose must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Agurs,* 427 U.S. at 108.

### B. The state courts correctly held Grace failed to prove a Brady violation

The state court correctly rejected Petitioner's claim of a *Brady* violation holding that the specific grand jury testimony identified by Petitioner was not material because there was no reasonable probability that such testimony would undermine confidence in the outcome of Petitioner's trial. The state court identified the scope of Petitioner's *Brady* claim, setting forth the following specific allegations regarding the grand jury testimony: 1) Det. Snow/Pernia's statement that Derek

Hudson was going to be arrested for his involvement in the robbery/murder; 2) Michelle Temple's testimony about possible identification of Hudson as the shooter; and 3) Det. Snow/Pernia's "false" statement that Temple had placed defendant at the scene of the murder. ROA.2671.

### 1. *Det. Snow/Pernia's grand jury statements were not material*

The state courts rejected Petitioner's arguments about the materiality of Det. Snow/Pernia's grand jury statements about her intent to arrest to Hudson and her misstatement about Temple having stated that she saw Grace at the scene of the murder. The state courts found such statements immaterial because: 1) at trial, the jury was presented with the same underlying evidence that Det. Snow/Pernia relied upon to determine Hudson's culpability; 2) there was no showing of any formal or informal deal between Hudson and the State for his testimony; 3) the culpability of Hudson had no bearing on Grace's culpability as the shooter; and 4) Temple gave numerous inconsistent statements to police about her observations of the incident.

First, the state court correctly noted that, "even though Detective Pernia's grand jury testimony about her intent to arrest Hudson was not

disclosed, the jury nonetheless heard the underlying evidence on which Detective Pernia determined that Hudson was culpable." ROA.2675. At the grand jury, Det. Snow/Pernia agreed that the case would rise and fall on Moses' eyewitness account of the incident and testified that she intended to arrest Hudson (referred to by his nickname "Nam") because Hudson robbed the victim before Grace shot and killed him. ROA.3289-90. And, at trial, the jury heard Moses' eyewitness testimony which, consistent with his prior statements, recounted how Grace and Hudson went back in the alleyway with the victim, how Grace struck the victim in the mouth with the gun, how Hudson then robbed the victim, and finally, how Grace shot in the victim in the back as the victim was trying to get away from Grace. ROA.1180-81.

Accordingly, Hudson's involvement and culpability in this incident was clearly known at trial to both the jury and to Grace, who could have but apparently chose not to highlight Hudson's involvement or challenge Hudson on his testimony in which he omitted his direct involvement in robbing the victim. Of course, this trial strategy to avoid focusing on Hudson's culpability for the robbery was imminently reasonable

considering that proving Hudson's culpability as the robber also confirms Grace's culpability as the shooter.

Second, the state court correctly pointed out that "there is absolutely no evidence to suggest that there was a deal, formal or informal, between Hudson and the State for leniency in exchange for his testimony against defendant." ROA.2675. In this respect, the state court noted Det. Snow/Pernia's testimony about her lengthy health issues related to a problem pregnancy during the investigation and also noted that the trial prosecutor testified in post-conviction proceedings that any deals made were required to have the district attorney's involvement, to be in writing, and to have been provided to defense counsel. ROA.2675. Even further, at trial, Grace was given the opportunity to question Hudson about any such deals, and Hudson unequivocally denied that any such deals existed, were discussed, or even contemplated. ROA.1141-1151.

Indeed, even Grace's speculation about a deal is illogical. The fundamental principle of every testimonial deal is that the witness is required to testify truthfully and fully as to his involvement, and in exchange, the witness usually receives either full immunity or a reduced

sentence in relation to the admitted involvement. But, here, Hudson never admitted, in his prior statement or trial testimony, to his involvement in the robbery of the victim, as would have been required under any theorized deal. As such, Grace's purely speculative assertion about a deal between Hudson and the State cannot support a *Brady* violation and neither can an intent to arrest Hudson, without more, be considered as anything more than pure speculation.

Third, the state court correctly concluded that the culpability of Hudson had no bearing on Grace's culpability as the shooter. At trial, Grace did not testify and put forth no witnesses to challenge the State's case that Grace was the shooter and that Hudson was involved in the robbery. As noted by the state court, even if Hudson's testimony was discounted in some way, the jury still heard the State's main witness, Sherman Moses, who witnessed the entire incident, and Moses' testimony has never been seriously discredited.

Fourth and finally, the state courts correctly rejected any materiality of Det. Snow/Pernia's grand jury statement that Temple told police (in one of her multiple inconsistent statements) that she had observed Grace at the scene of the murder. The state courts correctly held

it was reasonable to assume that Det. Snow/Pernia had been told at some point in the investigation that Temple had placed Grace at the scene of the murder, based upon Temple's multiple prior inconsistent statements to police about what she observed.

### 2. *Michelle Temple's grand jury testimony was not material*

Grace relies heavily on the grand jury testimony of Michelle Temple and conclusory assertions about such testimony in his attempt to prove his *Brady* claim. The state courts rejected Grace's arguments and found that Temple's grand jury testimony was not material because: 1) Temple admitted she did not see the actual shooting; 2) Temple was known to have given several inconsistent accounts of what she did observe; and 3) Temple's testimony, to the extent it is favorable to Grace, is contradicted by the physical evidence and other testimony at trial.

Specifically, Grace selectively quotes Temple's grand jury testimony to make the following assertions: 1) Temple testified at grand jury that she actually saw the shooting; 2) Temple testified at grand jury that she had identified Grace as the shooter through a photo lineup; and 3) Temple testified at grand jury that she had seen someone holding a gun to the victim's head after the victim had already been shot.

ROA.2717-2720. However, Grace's assertions regarding these selective quotes are based upon significant distortions and omissions of the record and dramatically overplays any possible materiality of these selective quotes.

First and foremost, the state courts correctly noted that Temple did not actually see the shooting and could not positively identify anyone at the scene from a photographic lineup. Grace's assertions that Temple stated in grand jury that she saw the shooting and identified Grace as the shooter is both a mischaracterization of Temple's grand jury testimony and if true, would actually be inculpatory and damning for Grace's defense. But, a simple reading of the entirety of Temple's grand jury testimony shows that Temple clarified that she had not seen the shooting nor had she even heard the shots fired. ROA.3294-96. Further, at trial, Temple was asked about being shown a photographic lineup (which included Hudson) to determine if she could identify Hudson as having been at the scene, and Temple specifically stated that she could not identify any of those individuals as having been near the victim's body. ROA.1036-37. In addition, Temple specifically confirmed that she did not see who shot the victim. ROA.1035. Thus, as the state courts

noted, Temple's testimony at trial "was not relevant to the actual shooting or identity of the perpetrator, but rather to explain the events leading up to and subsequent to the shooting." ROA.2676.

Second, the state courts relied on the well-established fact that Michelle Temple had given "several inconsistent statements throughout the investigation, the grand jury proceedings, and the trial." ROA.2675. The jury heard from initial responding officer, JPSO Officer Rene Phillips, who said Temple "told me about three different stories" when he initially spoke to Temple at the scene. ROA.926. In addition, Det. Snow/Pernia described Temple's initial statement to Detective Thurman as follows: "A lot of things didn't click to me. They didn't make sense…" ROA.1083. Even further, Det. Snow/Pernia testified at trial that she confirmed with Temple where her vehicle was parked during the shooting and "verified that she [Temple] could not in fact see back there [the alleyway where the shooting occurred]". ROA.1083. Accordingly, because Temple did not and could not see the actual shooting, any variations in Temple's statements to the grand jury could not possibly have had a material effect on the jury in light of Temple's numerous other inconsistent statements as to her observations.

Third, the state courts rightly rejected Grace's assertions regarding the significance of Temple's grand jury testimony which testimony was directly contradicted by the physical evidence and other testimony. Grace's assertions are directly contradicted by 1) Temple's own testimony that she did not see the shooter and could not identify Hudson through a photographic lineup as having been at the scene; 2) the physical and forensic evidence shows that the victim was shot from behind in the alleyway, while running away towards the street, and at a distance greater than 12-18 inches and 3) another trial witness, Michael Cheattham, who was nearby and heard the shots, saw the victim running a few second later and then fall down, and then only saw Temple and two other women go near the victim's body. ROA.963-965; ROA.969. ROA.2675-2678. Additionally, it is significant that both of the eyewitnesses who observed the shooting, Moses and Hudson, actually knew Grace prior to this incident and were readily able to identify Grace as the shooter as well as the specific details of the shooting.

Thus, as the state court correctly held, Temple's undisclosed grand jury testimony was not material because Temple readily admitted she did not see the shooting, because she had given numerous prior

inconsistent statements regarding her observations of these events, and because any assumption Grace attempts to draw from Temple's testimony that would be favorable to him is clearly refuted by the physical evidence and all other testimony in this case.

### C. Contrary to the district court's erroneous holding, the state courts correctly held that the suppressed grand jury testimony was not material

As explained by the Magistrate Judge in his Report and Recommendation in this matter, "The record demonstrates ample support for the denial of relief by both the Louisiana Fifth Circuit and the Louisiana Supreme Court based on the conclusion that the grand jury testimony was not material under *Brady*." ROA.2931. In order to prove a *Brady* violation, Grace was required to show that, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). And, as this Court has explained, "To prove a reasonable probability of a different result, the 'likelihood of a different result must be substantial, not just conceivable.'" *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (citing *Richter*, 131 S.Ct. at 792 and *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

Here, the Louisiana Fifth Circuit and the Louisiana Supreme Court correctly held that Grace failed to prove a *Brady* violation. The state courts examined, individually and cumulatively, the evidence relied upon by Grace to support his *Brady* claim, and the state court reasonably held that "the suppressed evidence is not material because while it inculpates Hudson, it does not, in any way, exculpate the defendant as to his participation in the commission of the murder." ROA.2677. The state courts also correctly noted that Hudson's culpability in the incident was clearly presented to the jury through Moses' eyewitness account. ROA.2674-2675. And, because Hudson's testimony corroborated all of Moses' eyewitness account (except for Hudson's direct involvement), any intent to or actual arrest of Hudson for his involvement would have actually strengthened the State's case as to Grace's involvement as the shooter.

As to Michelle Temple's grand jury testimony, the state courts reasonably pointed out that her testimony could not have been material where Temple made clear she did not see the actual shooting nor could she have identified the actual shooter. ROA.2675-2676. The state courts further reasonably held that any additional variations in her grand jury

statements could not have seriously influenced the jury given her numerous prior inconsistent statements about what she observed that day. ROA.2675-2676. And, indeed, the state courts decision on Temple was imminently reasonable where Grace's attempt to skew Temple's grand jury testimony as favorable to him is flatly contradicted by the physical evidence and other testimony at trial.

The district court's de novo conclusion below relied heavily and erroneously on Grace's purely speculative argument that Det. Snow/Pernia's professed intent to arrest Hudson was evidence of a deal between Hudson and the State. But, as the state court emphasized, "there is absolutely no evidence to suggest that there was a deal, formal or informal, between Hudson and the State for leniency in exchange for his testimony against defendant." ROA.2675. The district court erroneously rejected the state court's reasonable finding and credited Grace's purely speculative assertion of a deal. In doing so, the district court ignored this Court's own instructions that, "An applicant's speculation about the suppression of exculpatory evidence is an insufficient basis to support a *Brady* claim." *Medellin v. Dretke*, 371 F.3d 270, 281 (5th Cir. 2004)(citing *Hughes v. Johnson*, 191 F.3d 607, 630 (5th

Cir.1999)). And, this Court further instructed that, "[a]llegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)(citing *Hughes*, 191 F.3d at 629-30 and *United States v. Pretel*, 939 F.2d 233, 240 (5th Cir.1991)). As such, the district court clearly erred by relying upon Grace's purely speculative assertion about a deal between Hudson and the State which cannot support a *Brady* violation and neither can an intent to arrest Hudson, without more, be considered as anything more than speculation.

Finally, the state court's decision correctly noted that none of the alleged *Brady* evidence affected the testimony of Sherman Moses, who was the most important State's witness. In fact, Moses gave a detailed statement soon after the crime occurred and clearly identified the following significant facts: 1) the chain of events leading up to the shooting; 2) that Grace hit the victim in the face with the gun; 3) that Hudson was involved snatched the victim's jewelry after being hit; 4) that Grace then shot the victim in the back and the head as the victim was running away from Grace; 5) the location where Grace resided inside the complex where the shooting occurred; and 6) the type and caliber firearm

used by Grace in the shooting. ROA.2677-2678. All of this information, the state court noted, was corroborated by the physical and forensic evidence as well as the testimony of other witnesses. ROA.2677-2678. This independent witness, corroborated by the physical evidence and other eyewitness testimony provided strong evidence of Grace's guilt, even without the corroborating testimony of Hudson.

Additionally, as noted above, Moses' independent, strongly corroborated eyewitness account readily distinguishes this case from the most recent Supreme Court decisions in, *Smith* and *Wearry*. As this Court explained in *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020), "the multiple pieces of evidence withheld in *Wearry* addressed the key witnesses' motives to lie and directly undermined their testimony" and "[i]n *Smith*, the witness's undisclosed statements directly contradicted his testimony" as to the reliability of his identification of the defendant as the shooter. *Reeder*, 978 F.3d at 276 (citing *Wearry*, 577 U.S. at 392-393 and *Smith*, 565 U.S. at 76)(cleaned up).

Here, the State's case against Grace is "overwhelming," as the state appellate court observed on direct review in 1994. *Grace*, 643 So. 2d at 1309 (noting "the overwhelming evidence of the defendant's guilt."). And,

as the state intermediate appellate court reasoned on collateral review, "[e]ven discounting Hudson's testimony at trial about defendant's involvement in the crime, the jury heard Moses' testimony that defendant shot the victim." ROA.2677–78. It bears repeating that Moses was an independent eyewitness to the shooting. So, Hudson's testimony was not the "only evidence linking [the petitioner] to the crime." *Smith*, 565 U.S. at 76; *Agurs*, 427 U.S. at 113 ("[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."); *accord Floyd v. Vannoy*, 894 F.3d 143, 166 (5th Cir. 2018)("[W]ithheld evidence is more likely material when the State presents a weaker case for guilt.").

In sum, even under a *de novo* review, the Louisiana Fifth Circuit and the Louisiana Supreme Court's decisions that Petitioner Jessie Grace failed to prove a *Brady* violation were correct, and the district court clearly erred in granting Petitioner habeas relief.

## CONCLUSION

For the reasons discussed in greater detail above, the district court's Judgment granting the Petitioner's Corrected Supplemental

Amended Petition and ordering his release or retrial should be reversed,

and Petitioner's claims should be dismissed with prejudice.

JEFF LANDRY
ATTORNEY GENERAL

BY:  /s/ *Christopher N. Walters*

| | |
|---|---|
| Elizabeth Baker Murrill (#20685) | Christopher N. Walters (#35579) |
| Solicitor General | Grant L. Willis (#34820) |
| Shae McPhee (#38565) | Assistant Attorneys General |
| Deputy Solicitor General | Louisiana Department of Justice |
| Louisiana Department of Justice | Criminal Division |
| 1885 N. 3rd St. | P.O. Box 94005 |
| Baton Rouge, LA 70802 | Baton Rouge, LA 70804-9005 |
| (225) 326-6766 | Telephone: (225) 326-6200 |
| MurrillE@ag.louisiana.gov | E-mail:  WaltersC@ag.louisiana.gov |
| | WillisG@ag.louisiana.gov |

## CERTIFICATE OF SERVICE

I certify that the foregoing brief was electronically filed on the *2nd day of March, 2022,* using the court's CM/ECF system, which will provide a notice of electronic filing to counsel of record. I further certify that on this same date, a copy of this brief was served on the counsel of record for the Petitioner via Electronic Mail.

*/s/ Christopher N. Walters*
Christopher N. Walters

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains approximately *9,260 words* and *902 lines of text* excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that in compliance with the typeface requirements of Fed. R. App. P. 32(a)(5), this brief was prepared using Microsoft Office Word 2010, using Century Schoolbook 14 point font for the principal text, and Century Schoolbook 12 point font for footnotes.


*/s/Christopher N. Walters*          *March 2, 2022*
**CHRISTOPHER N. WALTERS**          **DATE**
Assistant Attorney General
Attorney for Defendants-Appellants